BENJAMEN C. MIZER
Principal Deputy Assistant Attorney General, Civil Division
JONATHAN F. OLIN
Deputy Assistant Attorney General
MICHAEL S. BLUME
Director, Consumer Protection Branch
ANDREW E. CLARK
Assistant Director, Consumer Protection Branch
Jacqueline Blaesi-Freed
jacqueline.m.blaesi-freed@usdoj.gov
United States Department of Justice
Consumer Protection Branch, Civil Division
P.O. Box 386
Washington, DC  20044
Telephone (202) 353-2809
Facsimile (202) 514-8742

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RETRO DREAMER, a corporation, and<br><br>CRAIG E. SHARPE and GAVIN S. BOWMAN,<br>    individually and as officers of<br>     RETRO DREAMER,<br><br>Defendants. | **Case No.** 5:15-cv-2569<br><br>**COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF** |

1

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission") for its Complaint alleges:

1. Plaintiff brings this action under Sections 1303(c) and 1306(d) of the Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. §§ 6502(c) and 6505(d), and Sections 5(a)(1), 5(m)(l)(A), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and 56(a) to obtain monetary civil penalties, a permanent injunction, and other equitable relief for Defendants' violations of the Commission's Children's Online Privacy Protection Rule ("Rule" or "COPPA Rule"), 16 C.F.R. Part 312, and Section 5 of the FTC Act.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345 and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a), and 57b.

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c), 1395(a), and 15 U.S.C. § 53(b).

## DEFENDANTS

4. Defendant Retro Dreamer, is a California corporation with its principal place of business in Upland, California. Retro Dreamer transacts or has

1  transacted business in this district and throughout the United States.  At all times

2  material to this Complaint, acting alone or in concert with others, Retro Dreamer

3  has advertised, marketed, distributed, or sold mobile applications ("apps") to

4  consumers throughout the United States.

5       5.     Defendant Craig E. Sharpe is President of Retro Dreamer.  At all

6  times material to this Complaint, acting alone or in concert with others, he has

7  formulated, directed, controlled, had the authority to control, or participated in the

8  acts or practices of Retro Dreamer, including the acts or practices set forth in this

9  Complaint.  Defendant Sharpe, in connection with the matters alleged herein,

10  transacts or has transacted business in this district and throughout the United

11  States.

12       6.     Defendant Gavin S. Bowman is Vice-President of Retro Dreamer.  At

13  all times material to this Complaint, acting alone or in concert with others, he has

14  formulated, directed, controlled, had the authority to control, or participated in the

15  acts or practices of Retro Dreamer, including the acts or practices set forth in this

16  Complaint.  Defendant Bowman, in connection with the matters alleged herein,

17  transacts or has transacted business in this district and throughout the United

18  States.

19

20

**COMMERCE**

7. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**THE CHILDREN'S ONLINE PRIVACY PROTECTION RULE**

8. Congress enacted COPPA in 1998 to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of children's personal information online by operators of Internet websites or online services. COPPA directed the Federal Trade Commission to promulgate a rule implementing COPPA. The Commission promulgated the COPPA Rule, 16 C.F.R. Part 312, on November 3, 1999 under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. The Rule went into effect in April 2000. The Commission promulgated revisions to the Rule that went into effect on July 1, 2013.

9. The Rule applies to any operator of a commercial website or online service directed to children that collects, uses, and/or discloses personal information from children, or on whose behalf such information is collected or maintained, and to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children. Under the Rule, personal information is "collected or maintained on

behalf of an operator when . . . [t]he operator benefits by allowing another person to collect personal information directly from users of" an online service. 16 C.F.R. § 312.2.

10. The Rule requires operators to give notice to parents and obtain their verifiable consent before collecting children's "personal information" online. 16 C.F.R. §§ 312.4 and 312.5. The definition of "Personal Information" includes a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services," subject to certain exceptions not at issue in this case. 16 C.F.R. § 312.2.

11. Among other things, the Rule requires that an operator meet specific requirements prior to using or disclosing personal information, including, but not limited to:

    a. Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth in the Rule;

    b. Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

  c. Obtaining verifiable consent prior to collecting, using, and/or disclosing personal information from children.

## DEFINITIONS

12. For purposes of this Complaint, the terms "child," "collects," "collection," "Commission," "disclosure," "Internet," "operator," "parent," "personal information," "obtaining verifiable consent," "third party," and "website or online service directed to children," are defined as those terms are defined in Section 312.2 of the Rule, 16 C.F.R. § 312.2.

## DEFENDANTS' BUSINESS PRACTICES

13. Since at least 2012, Defendants have offered a number of mobile apps for download from Apple's App Store, Google Play, and the Amazon App store. The apps include apps that are directed to children, such Ice Cream Jump, Happy Pudding Jump, Ice Cream Drop, Sneezies, Wash the Dishes, Cat Basket, and Tappy Pop ("kids' apps"). (*See* Exhibit A, copies of several kids' apps' initial screens.) The apps send and/or receive information over the Internet, and thus are online services pursuant to COPPA. Some apps are free to download and play, while others are paid apps. Revenues are generated through the sale of certain apps, in-app advertising, and in-app purchases.

14. Defendants are "operators" as defined by the Rule, 16 C.F.R. § 312.2.

1    15.    Ice Cream Jump, which has been available since 2012, is an app in which users play an endless jumping game, where users guide the cartoon ice cream scoop character through a colorful setting, moving as high as possible by tilting the device from side to side and collecting gold as they advance.  The description of the app in Google Play states, "Meet a happy Ice Cream Scoop who dreams of soaring through the skies.  Help our friendly dessert reach new heights in this action packed game."  Users can make in-app purchases to play with different colored ice cream scoop characters and to dress up the ice cream scoop character.  (*See* Exhibit B.)  An app marketed as Ice Cream Jump for Kids with the character in the same endless jumping game was also available in Apple's App Store.  (*See* Exhibit C.)

16.    Happy Pudding Jump, which has been available since 2013, is an app in which users play an endless jumping game, where users guide the cartoon pudding character through a colorful setting, moving as high as possible by tilting the device from side to side and collecting gold as they advance.  The description of the app in Apple's App Store states, "Happy Pudding is on the move!  Help our friendly pudding reach new heights in this action packed adventure."  (*See* Exhibit D.)  Users can make in-app purchases for different colored pudding characters and to dress up the pudding character.

17. Ice Cream Drop, which has been available since 2012, is an app in which users play an endless falling game, where users guide the cartoon ice cream scoop character down through platforms by tilting the device from side to side and collecting gold as they go. (*See* Exhibit E.) Users can make in-app purchases for different colored ice cream scoop characters.

18. Sneezies, which has been available since 2012, is an app in which users engage in simple play by tapping the colorful cartoon Sneezies characters floating on the screen to make them sneeze and burst out of their bubbles. The description of the app in Apple's App Store states, "Sneezies is an overload of cuteness!" (*See* Exhibit F.)

19. Wash the Dishes, which has been available since 2012, is an app in which users engage in simple play by scrubbing smiling dirty cartoon dishes to make them clean. The description of the app in Apple's App Store states, "[t]hese are cute happy dishes, they don't want to be dirty." (*See* Exhibit G.)

20. Cat Basket, which has been available since 2014, is an app in which users collect falling cartoon cats in a basket, while blocking falling dogs. The description of the app in the Apple's App store states it is "[e]ndless cute, crazy fun." (*See* Exhibit H.) An app marketed as Cat Basket for Kids with the same characters and play is available in Apple's App Store. (*See* Exhibit I.)

21. Tappy Pop, which has been available since 2014, is an app in which users engage in simple play by tapping on falling colorful cartoon Sneezies characters in order to make them sneeze and burst out of their bubbles. The description of the app in the Apple's App store reads, "Achoo! Try this fast and frantic new Sneezies game." (*See* Exhibit J.) An app marketed as Tappy Pop for Kids with the same characters and play is available in Apple's App Store. (*See* Exhibit K.)

22. Pursuant to Section 312.2 of the Rule, the determination of whether an app is directed to children depends on factors such as the subject matter, visual content, language, and use of animated characters or child-oriented activities and incentives. An assessment of these factors demonstrates that Retro Dreamer's kids' apps are directed to children under the age of 13. For example, Retro Dreamer's kids' apps contain brightly colored, animated characters including ice cream scoops, pudding, cats, and cartoon characters. (S*ee e.g.* Exhibit L, examples from Ice Cream Jump and Happy Pudding Jump). Their subject matter, which includes washing smiley, cheerful dishes, collecting cats, moving ice cream, and causing cartoons to sneeze, would be highly appealing to children. (*See e.g.* Exhibit M, examples from Wash the Dishes, Cat Basket, and Sneezies.) In addition, as described above in Paragraphs 15-21 and as shown in Exhibits B-K,

the language used to describe the apps in the app stores is simple and would be appealing to a child under age 13.

23. Through the kids' apps, Defendants allowed third-party advertising networks to collect personal information in the form of persistent identifiers, in order to serve targeted advertising on the app based on users' activity over time and across sites. Defendants did not inform these third-party advertising networks that the apps are directed to children and did not instruct or contractually require the advertising networks to refrain from targeted advertising. Nor did Defendants provide the required notices or obtain the required parental consent described in Paragraph 11.

24. Defendants were aware of the existence of COPPA, the July 2013 COPPA Rule change, and that certain of its apps appeared to be child-directed to at least one ad network. Defendants received notice that the Rule changed in July 2013 from a third-party ad network in November 2013, when the network asked Defendants to identify its child-directed apps. In response, Defendants suggested the ad network stop serving Defendants' apps ads. In June 2014, the network informed Defendants it believed that certain apps submitted to the network for ads were directed to children under the age of 13, including Ice Cream Jump, Ice Cream Drop, Cat Basket, Sneezies, Tappy Pop, and Wash the Dishes, and therefore those apps would be excluded from the ad network. Although this ad network did

not serve ads to Defendants' apps, Defendants have continued to allow other ad networks to collect personal information in the form of persistent identifiers, in order to serve targeted advertising in Defendants' kids' apps.

## VIOLATION OF THE CHILDREN'S ONLINE PRIVACY PROTECTION RULE

### Count I

25. Defendants operate online services directed to children, including through the kids' apps, which collect personal information from children under age 13.

26. In numerous instances since July 1, 2013, in connection with the acts and practices described above, personal information from children younger than age 13 was collected on behalf of Defendants in violation of the Rule. Defendants thus violated the Rule by:

    a. Failing to provide notice on Defendants' online services of the information they collect, or is collected on their behalf, online from children, how such information is used, and their disclosure practices, among other required content, in violation of Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d);

    b. Failing to provide direct notice to parents of the information Defendants collect, or information that has been collected on

        Defendants' behalf, online from children, how such information is used, and their disclosure practices for such information, among other required content, in violation of Section 312.4(b) of the Rule, 16 C.F.R. § 312.4(b); and

    c.    Failing to obtain verifiable parental consent before any collection or use of personal information from children, in violation of Section 312.5(a)(1) of the Rule, 16 C.F.R. § 312.5(a)(1).

Therefore, Defendants have violated the Rule, 16 C.F.R. Part 312.

27.    Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## THIS COURT'S POWER TO GRANT RELIEF

28.    Defendants violated the Rule as described above with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

29.    Each collection, use, or disclosure of a child's personal information in which Defendants violated the Rule in one or more of the ways described above constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

30.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 and Section 1.98(d) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of not more than $16,000 for each violation of the Rule on or after February 10, 2009.

31.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff United States of America, pursuant to Sections 5(a)(1), 5(m)(1)(A), 13(b), and 16(a) of the FTC Act, 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and 56(a) and the Court's own equitable powers, requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act and the Rule by Defendants;

B.     Award Plaintiff monetary civil penalties from Defendants for each violation of the Rule alleged in this Complaint; and

C.     Award other and additional relief the Court may determine to be just and proper.

|   |   |
|---|---|
|   | Respectfully submitted, |

Dated: December 17, 2015

| **FOR THE FEDERAL TRADE COMMISSION:** | **FOR PLAINTIFF THE UNITED STATES OF AMERICA:** |
|---|---|
| MANEESHA MITHAL<br>Associate Director<br>Division of Privacy and Identity Protection | BENJAMEN C. MIZER<br>Principal Deputy Assistant Attorney General<br>Civil Division |
| MARK EICHORN<br>Assistant Director<br>Division of Privacy and Identity Protection | JOHNATHAN F. OLIN<br>Deputy Assistant Attorney General<br>MICHAEL S. BLUME<br>Director<br>Consumer Protection Branch |
| MEGAN COX<br>Attorney<br>Division of Privacy and Identity Protection<br>Federal Trade Commission<br>600 Pennsylvania Avenue, N.W.<br>(202) 326-2282 | ANDREW E. CLARK<br>Assistant Director<br>  /s/ Jacqueline Blaesi-Freed<br>Jacqueline Blaesi-Freed<br>Trial Attorney, Kansas Bar No. 25455<br>Consumer Protection Branch<br>U.S. Department of Justice<br>P.O. Box 386<br>Washington, DC 20044<br>(202) 353-2809 |
| CORA HAN<br>Attorney<br>Division of Privacy and Identity Protection<br>Federal Trade Commission<br>600 Pennsylvania Avenue NW<br>Washington, DC 20580<br>(202) 326- 2441<br>(202) 326-3062 | |